UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                         PLAINTIFF

v.                                                       CRIMINAL ACTION NO. 3:21-CR-118-BJB

ADDISON DAILY                                                                    DEFENDANT

**SENTENCING MEMORANDUM**
*ELECTRONICALLY FILED*

Comes the Defendant, Addison Daily ("Addison"), by and through counsel, Brian Butler, and hereby submits the following sentencing memorandum in support of a sentence of 18 months followed by five (5) years of supervised release:

Addison pled guilty to one count of accessing with the intent to view child pornography in violation of 18 U.S.C. § 2252A(b)(2). Specifically, Addison pled guilty to accessing a website with the intent to view child pornography.

Because Addison's offense is a lower level felony offense (Class C), he is eligible for probation pursuant to 18 U.S.C. § 3561(c)(1). The statutory penalty range for 18 U.S.C. § 2252A(b)(2) is from no incarceration up to a statutory maximum penalty of no more than ten (10) years of incarceration. The Presentence Investigation Report ("PSI") calculated Addison's United States Sentencing Guideline ("Guidelines") range at 46-57 months.

Based upon the application of the factors in 18 U.S.C. § 3553(a), the undersigned respectfully requests the Court sentence Addison to 18 months followed by five (5) years of supervised release.

APPLICATION OF 18 U.S.C. § 3553(a)

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply the delineated sentencing considerations.

A.     Personal History and Characteristics

1.     *Family History and Personal Characteristics*

Addison did not have an ideal childhood. His father died when he was very young. His mother suffered from alcoholism. She also worked long hours as a trauma and forensic nurse at the University of Louisville Hospital. By her own admission, Addison essentially raised himself. He was the one that got himself up. He was the one that made sure his homework was done. Addison was committed to going to college. *Exh. 1*.

Likewise, Addison committed himself as a high school football player. He was not a gifted athlete. He spent three years on the scout team because he was not good enough to play varsity football. Yet, he persevered by working hard in season and off season and always approached his role by putting the team first. He earned a starting position on the offensive and defensive line his senior year. Coach Mike Gossett wrote that the "true greatness" of Addison was that he was a "dedicated, hard working, and unselfish person" despite his average talent. Coach Gossett further described Addison as an "outstanding young man." The strength of character and dedication that allowed Addison to work very hard for years to help his team without any assurance of even starting a high school football game much less playing beyond high school is commendable and says a great deal about his character.

Simply put, there is so much about Addison to be admired. Until this incident, Addison would have been a shining example of how to overcome adversity through hard work and a good

attitude. But, Addison's character and life amount to much more than simply the sum of this incident as his many character letters attest. *Exh. 3.*

2.   *Work History*

Addison began working with the United States Parcel Service (UPS) upon completing high school. He worked at UPS from May 23, 2013 until his resignation on September 21, 2021 in anticipation of his plea. Based upon his hard work at UPS, he rose to a position where he helped manage UPS' ground fleet. Importantly, he achieved this level of responsibility while also attending the University of Louisville and obtaining a Bachelor of Science degree. In a world where it is increasingly difficult to get people to work and seemingly every business has a "help wanted" sign posted, Addison's actions prove that he was and can continue to be a contributing member of society.

It goes without saying that losing his job at UPS was a devastating and collateral consequence of this incident. A long sentence is not necessary to punish or deter Addison. Those sentencing goals have already been achieved.

3.   *Educational History*

Addison attended the University of Louisville. He received a Bachelor of Science in 2019 with a major in political science. He graduated with honors. Addison earned his education. Aside from working at UPS, he also worked as a delivery driver for Bearnos to pay his way through the University of Louisville.

He dreamed of going to law school. He dreamed of being an Assistant Commonwealth Attorney. His dreams will not be realized. Nonetheless, Addison has the education and work ethic to be a contributing member of society.

4. *Criminal History*

Addison is a criminal history category I. He has no criminal history points.

5. *Conclusion*

Aside from this incident, Addison's personal history and characteristics are admirable and worthy of emulation. He did not have an ideal family situation but he did not use that as an excuse. Addison dedicated himself to school and football. He excelled on his own.

He worked two jobs to attend college. He bought his own home at the age of 21 years old. Despite the time constraints of working two jobs while attending college, he excelled academically at the University of Louisville and earned a supervisory position at UPS. As his character letters attest, he never lost sight of his family and friends as he diligently worked to build a life for himself. He is honest, loving and hardworking. His personal history and characteristics advocate strongly for leniency.

B. <u>Nature and Circumstances of the Offense</u>

Addison accessed a website with the intent to view child pornography. When approached by law enforcement, Addison admitted that he viewed child pornography. He told law enforcement that he wanted to view teenage girls. Addison advised federal agents that he never shared child pornography with anyone else and that he never saved any child pornographic images or videos. He also advised agents that he never attempted to contact any underage teenagers. Addison was truthful with agents as confirmed by their analysis and the absence of additional charges such as distribution, enticement or even possession of child pornography. In fact, Addison is unique among child pornography defendants in that he did not have any images.

According to the United States Sentencing Commission, 94% of defendants sentenced pursuant to Guideline § 2G2.2 in 2020 received an image enhancement pursuant to § 2G2.2(b)(7).

For all the aforementioned reasons, we respectfully submit that the nature and circumstances of the offense support a sentence of eighteen (18) months.

C.  Avoiding Unwarranted Sentencing Disparity

According to the United States Sentencing Commission's Interactive Data Analyzer, in 2020 only 34% of defendants sentenced for child pornography with a primary Guideline of § 2G2.2 received a within range Guideline sentence (30.7%) or an above range sentence (3.5%). Fully 65% of all defendants, regardless of criminal history category, received a sentence below the applicable Guideline range including 44.3 % of defendants who received a below Guideline sentence without a Government motion for a variance, substantial assistance or downward departure.

Defendants with a criminal history category I, like Addison, were only sentenced within the Guideline range or above the Guideline range in 25% of the cases. Fully 75% of defendants with a criminal history category of I received a sentence below the applicable Guideline range including 50% of defendants who received a below Guideline sentence without a Government motion for a variance, substantial assistance or downward departure.

It is likely that the high percentage of below Guideline sentences in the child pornography realm is a recognition by courts that many of the Guideline enhancements pursuant to § 2G2.2 do not differentiate between defendants and without variances would lead to sentences significantly longer than necessary. The "use of a computer" enhancement pursuant to § 2G2.2(b)(6) was applied in 94.2% of the cases in 2020 according to the United States Sentencing Commission.

Nearly everyone that commits a child pornography offense uses a computer. It is an enhancement without a distinction and frequently results in variances in United States District Courts in this district and around the United States. Likewise, the "victim under the age of 12" enhancement pursuant to § 2G2.2(b)(2) was applied in 93.6% of the cases in 2020 according to the United States Sentencing Commission. Again, nearly every defendant received a two level enhancement under § 2G2.2(b)(2). Once again, this is an enhancement with a distinction.

      Finally, Addison received a four level increase because the website he accessed portrayed "sadistic or masochistic conduct or other depictions of violence." While the website Addison accessed contained material triggering this enhancement per the PSI, Addison's was looking for pornography involving teenage girls not child pornography depicting small children. It is further worth noting that Addison did not save one single image so it is unclear what images he actually viewed. Addison was very clear in his confession to federal agents, to the federal prosecutor when he met with her and her agents and in his counseling that sadistic or masochistic child pornography was not what he was seeking.

      Simply put, sentencing Addison to 46 months as the Government recommends would lead to an unwarranted sentencing disparity. An eighteen (18) month sentence followed by five (5) years of supervised release is an appropriate sentence in this case.

      D.     <u>Need for the Sentence Imposed.</u>

      An eighteen (18) month sentence followed by five (5) years of supervised release is sufficient but not greater than necessary to accomplish the sentencing goals. Our suggested sentence reflects the seriousness of the offense but also takes into account all of the mitigating factors reflected in the PSI and this sentencing memorandum.

Addison has no criminal history. He never distributed child pornography nor did he even save what he accessed. He viewed it, felt disgusted with himself for viewing it and purged it. He should have gotten help sooner for his pornography addiction but he was simply embarrassed.

Upon being confronted by law enforcement about accessing the website in question, Addison admitted his wrongdoing. Subsequently, he participated in a proffer examination with the Government. He attempted to provide them as much information as possible as to how he located and accessed the website. While the undersigned does not anticipate that the Government will file a motion to reduce his sentence based upon his cooperation because Addison does not possess any information about anyone else because he never interacted with anyone else, it is admirable that Addison agreed to participate in an interview with the Government to answer any and all questions posed to him in an effort to assist them in future investigations.

Addison also sought help from a Shea Herron, M.Ed., a Kentucky Approved Provider of Sex Offender Evaluation & Treatment. Addison participated in therapy sessions beginning in December 2020 and continuing until his detention following his entry of a guilty plea. Dr. Herron stated, "Based upon the applicable risk assessment instruments, clinical presentation, and history available to this provider, Mr. Daily's risk to reoffend is considered to be low for any sex offense as well specifically child pornography offenses." *Exh. 4.* Dr. Herron's opinion that Addison is low risk is not in the least surprising given that he did not maintain images, distribute images, communicate with anyone about child pornography or seek to contact anyone underage. Nonetheless, Dr. Herron's professional opinion is further support for leniency.

Given Addison's commitment to hard work and maintaining an untarnished reputation, this has been a horrific experience. Regardless of the Court's sentence, he will have a felony conviction for the rest of his life. He will also be required to register as a sex offender for many years despite the fact that he is low risk to ever engage in like conduct again. He will carry this albatross with him for the rest of his life and because of this conviction is life will be remarkably more difficult. It goes without saying that even a probated sentence would specifically deter Addison.

General deterrence is also satisfied regardless of the sentence. Anyone who is aware of what has happened to Addison, specifically including the collateral consequences such as the sex offender registry, a felony conviction, loss of employment and public humiliation, would certainly be deterred from engaging in similar conduct and likely deterred from even looking at adult pornography for fear of stumbling onto a forbidden website.

The final statutory consideration for the Court to evaluate under "the need for the sentence imposed" factor is how Addison can best receive any necessary training or treatment. Without question, Addison benefits by continuing his treatment with Dr. Herron. As delineated in her report, Addison was motivated for treatment and progressing in his treatment. This sentencing factor advocates heavily for a lenient sentence.

E. <u>The Kinds of Sentences Available.</u>

Addison is statutorily eligible for probation.

F. <u>Need to Pay Restitution</u>

Addison concurs with the Government's position that restitution is not appropriate in this case.

G.  Conclusion

An eighteen (18) month sentence followed by five (5) years of supervised release is sufficient but not greater than necessary to accomplish the goals of sentencing.  Addison has lived an exceptional life and has accomplished much for which he should be proud and commended.  While any child pornography crime is serious, Addison's conduct is on the very low end of the conduct of a federal child pornography defendant.  Moreover, he confessed, cooperated with the Government's investigation and sought professional help.  He is a low risk to reoffend.  Society does not need Addison incarcerated for the public's protection.  The lengthy sentence recommended by the Government is far greater than necessary to accomplish the goals of sentencing.

WHEREFORE, Addison Daily respectfully requests that the Court sentence him to eighteen (18) months followed by five (5) years of supervised release.

Respectfully submitted,

/S/ Brian Butler
_____

Brian Butler
Stites & Harbison
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
(502) 594-1802

CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing Sentencing Memorandum was electronically filed on January 3, 2022 with service to the Honorable Stephanie Zimdahl.

/S/ Brian Butler
_____

Brian Butler